HAITH & COMPANY, INC., and St. Louis Air Cargo Services, Inc., Respondents,

v.

ELLERS, OAKLEY, CHESTER & RIKE, INC., Appellant.

No. WD 41839.

Missouri Court of Appeals, Western District.

Oct. 17, 1989.

---

**418**

Larry L. McMullen, Timothy W. Triplett, David B. Raymond, Blackwell Sanders Matheny Weary & Lombardi, Kansas City, for appellant.

Robert B. Best, Jr. & Emily Jane Bailey, Watson, Ess, Marshall & Engass, Kansas City, for respondents.

Before MANFORD, P.J., and SHANGLER and CLARK, JJ.

MANFORD, Presiding Judge.

Ellers, Oakley, Chester & Rike, Inc. (hereinafter EOC & R) appeals from a judgment issuing a permanent stay and injunction against it from pursuing arbitration proceedings based upon its contract with Haith & Company, Inc. or its separate contract with St. Louis Air Cargo Services, Inc.

EOC & R is a Tennessee corporation engaged in offering professional engineering services. Harry Rike is the president of EOC & R. Hall Oakley is Chairman of the Board of the corporation. Both are professional engineers registered in Missouri since 1977 and 1987, respectively.

Haith & Company, Inc. (Haith) and St. Louis Air Cargo Services, Inc. (St. Louis Air Cargo) are Missouri corporations which share common directors and officers, and have similar purposes; both are development and real estate companies which, among other things, develop, construct, and operate air cargo facilities.

On April 30, 1986, EOC & R contracted with Haith to provide Haith with engineering services in connection with the development of an air cargo facility at Kansas City International (KCI) Airport in Missouri. The KCI contract provided for arbitration of all claims, counterclaims, disputes or other matters in question between the parties. Harry Rike affixed his Missouri professional engineering seal to the plans and specifications prepared by EOC & R for the KCI project.

On April 17, 1987, EOC & R contracted with St. Louis Air Cargo to provide engineering services for the development of an air cargo facility at St. Louis International Airport. Like the KCI contract, this contract contained the arbitration provision. The plans prepared by EOC & R for the St. Louis project bear the professional engineering seal of either Harry Rike or Hall Oakley.

At the time the KCI contract was executed, Harry Rike instructed Tennessee counsel for EOC & R to take the steps necessary to comply with Missouri law. Consequently, EOC & R obtained a Certificate of Authority to do business in Mis-

souri as a foreign corporation. Hall Oakley was licensed as a professional engineer in the state of Missouri.

Disputes eventually arose between EOC & R and Haith and St. Louis Air Cargo regarding EOC & R's performance or failure to perform under the separate contracts and the amount of payments due and owing EOC & R on each project. EOC & R sought arbitration to resolve the disputes. On March 18, 1988, Haith and St. Louis Air Cargo filed a Joint Application For The Stay Of Arbitration Proceedings in the circuit court on the grounds that there were no valid contracts or agreements to arbitrate because Missouri statutory law declares as unenforceable every contract for engineering services entered into by a person who is not a registered or authorized professional engineer. The court ordered a temporary stay of the arbitration proceedings.

There is no dispute as to the fact that at the time EOC & R entered into both contracts and during its performance of both contracts, it, as a foreign corporation, was not duly registered as a professional engineer or authorized, as required by Chapter 327 of the Missouri Revised Statutes, to render professional engineering services in Missouri.[1] EOC & R became aware of its violation of Missouri law when the joint application for stay of arbitration was filed. EOC & R immediately applied for and, on April 21, 1988, received its corporate certificate of authority from the Missouri Board for Architects, Professional Engineers, and Land Surveyors. The record contains an affidavit stating that had EOC & R disclosed that it was not registered or authorized to perform professional engineering services in Missouri, neither Haith nor St. Louis Air Cargo would have contracted with EOC & R.

After trial, the circuit court issued the permanent stay and injunction against EOC & R from pursuing arbitration on either contract. The trial court concluded that the contracts, including the arbitration provisions they contain, are unenforceable pursuant to Chapter 327 because EOC & R failed to properly register and become authorized to render professional engineering services in Missouri. The trial court appropriately did not consider the merits of the disputes to be arbitrated, but rather considered the enforceability of the contracts containing the arbitration provisions. EOC & R appeals from the judgment. The judgment is affirmed.

EOC & R formally raises four points on appeal which, in summary, present two points for this court's review. EOC & R contends that the trial court erred in permanently enjoining it from arbitration in that the court (1) misconstrued provisions of Chapter 327, RSMo 1986 [2], and (2) erroneously declared and applied the law by rejecting the doctrine of substantial compliance as it relates to the corporate certification requirements of Chapter 327 and failing to apply the doctrine in this case to EOC & R.

■ In its first point on appeal, EOC & R contends that the trial court erred in enjoining arbitration because the court failed to consider, as a whole, the regulatory scheme of Chapter 327. Appellant argues that Harry Rike and Hall Oakley practiced the personal right of engineering through the medium of a corporation and because these individual engineers complied with individual registration requirements, the corporate entity satisfied the statutory requirements as a whole. This argument of compliance as a whole ignores entire provisions within the Chapter 327, lacks merit, and is rejected by this court.

The Missouri Legislature regulated the practices of architecture, professional engineering and land surveying by enacting Chapter 327. For the purposes of that chapter, the term "person" is defined as

---

1. A foreign corporation's registration and authorization by the Missouri Board for Architects, Professional Engineers, and Land Surveyors, under Chapter 327, to render professional engineering services in Missouri is different and distinct from a foreign corporation's authorization by the Secretary of State, under Chapter 351, to transact business in Missouri.

2. All statutory references are to RSMo 1986, unless otherwise noted.

any person, corporation, firm, partnership, association, or other entity. Section 327.-011(6). No person shall practice as a professional engineer in Missouri unless and until there is issued to him a certificate of registration or a certificate of authority certifying that he has been duly registered as a professional engineer or authorized to practice engineering in Missouri. Section 327.191. Any person who practices unauthorized professional engineering in Missouri is guilty of a class A misdemeanor. Section 327.201. Furthermore, the legislature specifically provided in § 327.461 that:

> [e]very contract for ... engineering ... services entered into by any person who is not a ... registered or authorized professional engineer ... shall be unenforceable by the unregistered or unauthorized ... professional engineer.

Given § 327.461, the trial court found as unenforceable by EOC & R its separate contracts with Haith and St. Louis Air Cargo.

EOC & R is correct in that the right of Harry Rike and Hall Oakley to practice professional engineering is a personal right and each may practice engineering through the medium of a corporation. Indeed, subsection 1 of § 327.401 provides that:

> 1. The right to ... practice as a professional engineer ... shall be deemed a personal right, based upon the qualifications of the individual, evidenced by his certificate of registration and shall not be transferable; but ... any registered professional engineer ... may practice his profession through the medium of, or as a member or as an employee of, a partnership or corporation if ...

Subsection 1 conditions an individual's practice of engineering through the medium of a corporation upon the requirement that the plans, specifications, estimates, plats, surveys or other like documents are signed and stamped with the personal seal of the registered professional engineer by whom or under whose personal direction the same were prepared and that the registered engineer shall be personally and professionally responsible therefor.

Although EOC & R is correct that individual engineers may register and practice their profession through the medium of a corporation, the analysis of the statute must proceed further to subsection 2 of § 327.401. The argument of EOC & R fails because it ignores subsection 2, which clearly requires all corporations, domestic and foreign, to obtain a certificate of authority to practice professional engineering in Missouri. Subsection 2 states:

> Any domestic corporation formed under the general and business corporation law or under the professional corporation law of this state, or any foreign corporation, now or hereafter organized and having as one of its purposes the practicing of architecture or professional engineering or land surveying and any existing corporation which amends its charter to propose to practice architecture or professional engineering or land surveying shall obtain a certificate of authority for each profession named in the articles of incorporation from the board which shall be renewed in accordance with the provisions of section 327.171 or 327.261 or 327.351, as the case may be, and from and after the date of such certificate of authority and while the authority or a renewal thereof is in effect, may offer and render architectural or professional engineering or land surveying services in this state if:
>
> (1) At all times during the authorization or any renewal thereof the directors of the corporation shall have assigned responsibility for the proper conduct of all its ... professional engineering ... activities in this state ... to a professional engineer registered and authorized to practice engineering in this state ...; and
>
> (2) The person or persons who is or are personally in charge and supervises or supervise the ... professional engineering ... of any such corporation in this state shall be registered and authorized to practice ... professional engineering ... as provided in this chapter; and
>
> (3) The corporation pays such fees for the certificate of authority, renewals or reinstatements thereof as are required.

Both subsections 1 and 2 of § 327.401 have been set out in detail to emphasize that the regulatory scheme in the statute specifically addresses the situation of a corporation becoming authorized to practice engineering in Missouri. EOC & R is simply wrong in arguing that under Chapter 327 it is sufficient if one or several individual professional engineers, rendering their services through the medium of a corporation, each obtain a certificate of registration. Our state's regulatory scheme clearly requires the entity of a foreign corporation to obtain its own certificate of authority prior to rendering engineering services in Missouri.

Moreover, this court rejects the argument that the professional engineering services in this case were rendered by either Harry Rike or Hall Oakley, as registered engineers. The party listed as "ENGINEER" in the contracts is Ellers, Oakley, Chester & Rike, Inc. Harry Rike and/or Hall Oakley were not parties to the separate contracts, were not parties in the arbitration or lower court proceedings, and are not parties to this appeal. More importantly, it is the corporate entity which failed to timely obtain a certificate of authority to practice engineering in Missouri.

EOC & R's first point is ruled against it.

■ In the second point on appeal, EOC & R contends that the trial court erroneously rejected the doctrine of substantial compliance as it relates to the corporate certification requirements of Chapter 327 and failed to apply the doctrine in this case. EOC & R urges this court to rule that substantial compliance with the corporate engineering certification requirements of § 327.401 suffices (even though technical or literal compliance has not been obtained and the corporation does not possess a certificate of authority) so that a corporation substantially complying with certification requirements may enforce all contracts entered into in Missouri. This court refuses to so rule. The trial court did not erroneously declare or apply the law by rejecting the doctrine of substantial compliance in this context. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

This issue is one of first impression in Missouri in the sense that no court in this state has applied the doctrine of substantial compliance to the corporate certification requirements of Chapter 327 pertaining to architects, engineers and land surveyors. As previously set forth above, the Missouri Legislature, in regulating the practice of engineering in this state, provided in § 327.461 that every contract for engineering services entered into by any person who is not a registered or authorized professional engineer shall be unenforceable by the unregistered or unauthorized professional engineer. The import of § 327.461 is mandatory unenforceability of such contracts. Section 327.461 is unlike other statutory sections which provide for the enforcement of a penalty only so long as a statutory requirement has not been met. For example, see § 351.635 which denies access to Missouri courts to foreign corporations which fail to procure a certificate of authority from the Secretary of State *only while* the requirements of Chapter 351 have not been complied with. In contrast, § 327.461 is preclusive and does not provide that a later cure of a Chapter 327 violation allows an engineering corporation to thereafter enforce contracts made while it was unregistered or unauthorized.

The case of *Maran–Cooke, Inc. v. Purler Excavating, Inc.,* 585 S.W.2d 38 (Mo. banc 1979), cited by all parties, is not directly on point. In *Maran–Cooke,* a corporation performed engineering services in Missouri without obtaining a certificate of authority. The corporation thereafter sought to enforce a statutory lien against a party to the contract for the unpaid services. However, the legislature, through § 429.015.1, RSMo Supp.1975, restricted the right to pursue a lien to registered professional engineers. The court ruled that the professional engineering corporation could not claim the benefits of the statutory lien because it had not become registered by securing a certificate of authority. *Maran–Cooke,* 585 S.W.2d at 40. In light of the registration requirement in § 429.015, it was unnecessary for the Supreme Court to consider the effect of

§ 327.461 upon the engineering corporation which failed to obtain the required certificate of authority. Further, there was no claim in *Maran–Cooke* that the corporation substantially complied with the certification requirements.

EOC & R, citing *Duncan v. Missouri Board For Architects, Professional Engineers and Land Surveyors,* 744 S.W.2d 524, 531 (Mo.App.1988), argues that the general purpose behind professional licensing statutes, such as Chapter 327, is to protect the public rather than to punish the licensed professional. Notwithstanding this general purpose, the Board may subject professional engineers to discipline for misconduct and the failure to accept professional engineering responsibilities in Missouri, as was done in *Duncan* following the fatal collapse of walkways at the Hyatt Regency Hotel in Kansas City. EOC & R asserts the equitable argument that it substantially complied with Chapter 327, the contracting parties received the work of individually registered professional engineers and the same benefit and protection as if EOC & R had strictly complied with the statute, the contracting parties were not misled or prejudiced, and, hence, EOC & R should not be penalized for an inadvertent technical failure to become certified. This court acknowledges the harsh impact resulting from the corporation's loss of contractual benefits for the rendition of engineering services, but this court is duty bound to follow our state legislature's clear mandate that contracts entered into by unregistered or unauthorized professional engineers shall be unenforceable by them. As the Supreme Court wrote in *Maran–Cooke* in response to the corporation's arguments that equitable principles justify recovery through a lien for engineering services rendered while a corporation was unauthorized to practice in Missouri, such principles cannot override the mandate of the legislature and it is to that branch of government that arguments concerning the wisdom and equity of a statute should be addressed. *Maran–Cooke,* 585 S.W.2d at 41.

EOC & R's second point is ruled against it.

Counsel conceded on oral argument that the issue decided by the judgment below was the right of EOC & R to enforce the contract and the arbitration clause therein. This court does not consider or pass judgment on whether EOC & R has some other remedy to recover payment for its engineering services, such as an action in quantum meruit, because that issue is beyond the scope of this case. For the same reason, arguments based on equitable principles are beyond the scope of this case. This court affirms that § 327.461 precludes EOC & R from recovery in a suit based upon the separate contracts with Haith and St. Louis Air Cargo.

The judgment is affirmed.

All concur.