**In re BRANSON MALL, INC., Debtor.**

**Charles C. MacLEAN, III, Architect, Ltd., Plaintiff,**

v.

**OZARK MOUNTAIN COUNTRY MALL, INC., et al., Defendants.**

**Bankruptcy No. 89–60657–S.**
**Adv. No. 90–6024–S–1.**

United States Bankruptcy Court, W.D. Missouri, S.D.

Nov. 13, 1990.

 

Steven W. Garrett, St. Louis, Mo., for plaintiff, Charles C. MacLean, III, Architect, Ltd.

Gary W. Allman, Branson, Mo., for Branson Mall, Inc. and United Sav. & Loan.

Robert C. Jones, St. Louis, Mo., for United Southwest Service Agency, Inc.

Raymond I. Plaster, Springfield, Mo., for Phillip Roper.

Peter H. Rea, Branson, Mo., for Daniel J. O'Connell and Glenn Robinson, Statutory Trustee for Ozark Mountain Country Mall, Inc.

Joel Pelofsky, Kansas City, Mo., for Branson Mall, Inc., debtor.

AMENDED

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

KAREN M. SEE, Bankruptcy Judge.

On September 6, 1990, a hearing was held on defendants' Motions for Summary Judgment directed to all three counts of plaintiff's Second Amended Petition. Appearances were entered by Steven W. Garrett, attorney for plaintiff corporation Charles C. MacLean, III, Architect, Ltd.; Gary W. Allman, attorney for defendants Branson Mall, Inc. and United Savings & Loan Association; Robert C. Jones, attorney for defendant United Southwest Service Agency, Inc.; Raymond I. Plaster, attorney for defendant Phillip L. Roper; and Peter H. Rea, attorney for defendants Daniel J. O'Connell and Glen Robinson, Statutory Trustee for Ozark Mountain Country Mall, Inc. The court has jurisdiction pursuant to 28 U.S.C. § 1334. This adversary action is a core proceeding under 28 U.S.C. § 157(b)(2)(B) and (K). The court makes the following findings of fact and conclusions of law.

In 1986, plaintiff corporation, Charles C. MacLean, III, Architect, Ltd., filed a petition in state court. Count I was to enforce a mechanics lien relating to architectural services provided for a shopping center in Branson, Missouri, now known as Branson Mall, Inc. Counts II and III involved claims based on breach of contract.

Some time after Branson Mall, Inc. filed its Chapter 11 bankruptcy case, all mechanics lien litigation pending in state court was removed to this bankruptcy court with plaintiff's consent. Plaintiff's action had been pending for several years in state court, along with about 25 other mechanics lien actions, prior to Branson Mall's bankruptcy petition. The inconclusive status of the mechanics lien suits was impeding debtor's efforts to reorganize, so the suits were all transferred to this court so that validity and extent of those secured claims could be determined and the Chapter 11 reorganization could proceed. After the cases were removed to bankruptcy court, all but this

one were settled. Plaintiff's action is the only one remaining.

Plaintiff claims a lien for approximately $800,000, but due to defendants' previous settlement for payment of $125,000 to Engineering Design and Management, Inc., whose claim was encompassed in plaintiff's demand, plaintiff's claim must be reduced to approximately $675,000.

Defendants filed motions for summary judgment on all three counts of the petition.[1] Defendants argued they were entitled to summary judgment as a matter of law because plaintiff, by reason of not being registered to practice architecture within the State of Missouri at the time it entered into a contract to perform architectural services and performed those services, is precluded from filing and enforcing a Mechanics Lien pursuant to Mo.Rev.Stat. § 429.015, and is also precluded from enforcing said contract pursuant to Mo.Rev. Stat. § 327.461.

Plaintiff responded by arguing that summary judgment was not appropriate because a genuine issue of material fact existed as to when the written contract was executed. Plaintiff argued that this factual dispute was material in that it directly related to the legal issue of plaintiff's right to assert and enforce the mechanics lien. Plaintiff argued generally in the alternative that if this factual issue was not relevant, summary judgment for defendants is still not appropriate as a matter of law.

After hearing arguments, and upon consideration of the arguments, pleadings, exhibits, documents, admissions on file, affidavits and briefs, the court finds there is no genuine issue as to any material fact, and defendants are entitled to judgment in their favor as a matter of law.

Mr. MacLean, an individual who is not a party to this action, is a 50% shareholder in the plaintiff corporation. The plaintiff corporation is engaged in the architectural business. The plaintiff corporation, and not Mr. McLean, filed the mechanics lien and the resulting petition for enforcement of the lien and breach of contract. Mr. MacLean is a resident of Arizona, and plaintiff's principal place of business is in Arizona. Although Mr. MacLean has been a registered architect in Missouri since November 3, 1980, plaintiff corporation was not registered to practice architecture in Missouri until June 12, 1984.

Mo.Rev.Stat. § 327.101 prohibits individuals and corporations from practicing architecture in Missouri unless they are registered to practice architecture in Missouri. It is extremely important to note that during argument on the summary judgment motions, plaintiff acknowledged that Mr. McLean, plaintiff's officer, knew that Missouri law required the plaintiff corporation to be registered before it could perform work in the State of Missouri, but that Mr. McLean did not want to take the time to make the registration.

In 1982, plaintiff corporation was asked to provide master planning services for the purpose of evaluating land use alternatives for property located in Branson, Missouri. Plaintiff began performing those services in 1982. In 1983, development of a shopping center, now known as Branson Mall, became the focal point of the development. Plaintiff corporation was to provide the necessary architectural work for the shopping center. Those architectural services are the subject of the mechanics lien.

Under Bankruptcy Rule 7056 and FRCP 56, summary judgment is appropriate if "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corporation v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Thus, the court must first determine whether an issue of material fact exists

---

1. Defendants Branson Mall, United Savings & Loan, and United Southwest Service Agency originally filed a motion for summary judgment as to Count I. Defendants Daniel O'Connell, Glenn Robinson, Statutory Trustee for defunct Ozark Mountain Country Mall, Inc., and Phillip Roper subsequently filed motions for summary judgment as to Counts II and III wherein they adopted and incorporated the reasoning of the motion, affidavit, and suggestions in support filed by Defendants Branson Mall, United Savings & Loan, and United Southwest Service Agency, Inc.

before proceeding to determine whether defendants are entitled to judgment as a matter of law.

In the motion for summary judgment, defendants state that on or about December 7, 1983, plaintiff entered into a written contract to perform architectural services. In response, plaintiff alleges that the contract dated December 7, 1983, was not in fact executed on this date but was executed sometime in the middle or latter part of 1984. Plaintiff argued that summary judgment was not appropriate because this disputed issue of fact was material in that it directly related to the legal issue of plaintiff's right to assert and enforce the mechanics lien and contract claims.

Plaintiff contends that it prepared a draft contract in December of 1983 which was dated December 7, 1983, and provided for architectural services in the amount of $750,000. Plaintiff states that this document was not executed at that time. Plaintiff asserts that the document was subsequently revised to include additional architectural services in the amount of $960,000, and that contract was not signed until mid–1984.[2]

Plaintiff argued that the contract to perform architectural services may have been entered into after June 12, 1984, the date plaintiff became registered in Missouri. Alternatively, plaintiff asserted that September 25, 1984, the date the documents for the project were sealed with plaintiff's architect's seal, might even be considered the effective date of any contract because the developers allegedly received no benefit under the contract until that date, despite the fact that plaintiff had been performing work pursuant to an agreement between the parties since 1982. Based on these disputed facts which plaintiff asserted are material, plaintiff argued that it did not enter into a contract to perform architectural services until after it was properly registered on June 12, 1984, or alternatively, that no services were technically performed until the documents were sealed. The court rejects these arguments for the following reasons.

Plaintiff does not deny that before December 7, 1983, the parties were operating pursuant to an oral agreement and that the draft contract dated December 7, 1983 represented a written memorandum of the parties' agreement as of that date, even though it was not signed at that time.

Plaintiff, for the first time in all the proceedings that have taken place over several years in both state court and bankruptcy court—and only when it was necessary to find some disputed issue of fact in order to avoid summary judgment—now alleges that the contract was not executed or entered into on December 7, 1983. Plaintiff's allegation is contrary to all of plaintiff's previous pleadings, exhibits, affidavits, and depositions, in which plaintiff consistently stated that plaintiff entered into the contract on or about December 7, 1983.[3]

Nevertheless, the date the actual written contract was executed is not an issue material to whether judgment should be entered as a matter of law. The distinction between disputed facts which are not material and disputed facts which are material

---

2. Plaintiff relies on a copy of a letter dated March 14, 1984, from plaintiff to the developers which states that two copies of the revised contract were being sent to the developers pursuant to the developers' request. This letter is Exhibit 5 attached to plaintiff's suggestions in opposition.

3. Plaintiff, in its Second Amended Petition, included a copy of the contract dated December 7, 1983, as Exhibit 1. Plaintiff's mechanic's lien, the petition originally filed in state court, and an affidavit dated July 31, 1987 and signed by Mr. MacLean all expressly stated that plaintiff entered into the contract on or about December 7, 1983. In a deposition taken May 26, 1988, Mr. MacLean stated that plaintiff entered into the contract in the latter part of 1983 and acknowledged that the contract was dated December 7, 1983. All of these statements of plaintiff, by Mr. Maclean, are admissions by plaintiff as to when it believed it was performing architectural services pursuant to a contract upon which defendants relied in the motion for summary judgment.

In an affidavit attached to plaintiff's suggestions in opposition to summary judgment, Mr. MacLean purports to change the date the contract was entered into when it became necessary to deal with the registration issue raised by defendants in the motion for summary judgment.

must be recognized. Although the date a written contract was actually signed may be disputed, the issue is not material to the question of whether judgment should be entered as a matter of law. It is undisputed that on and before December 7, 1983, the parties were operating pursuant to an agreement. The facts which are material to the question of law presented in the motion for summary judgment relate to whether plaintiff performed architectural services without being registered to practice architecture in Missouri.

■ Based on the uncontradicted facts presented, it is clear that plaintiff, pursuant to an agreement which started as oral, then was memorialized in the December, 1983 draft contract, and was finally modified as reflected in the written contract signed in late 1984, performed substantial architectural services relating to the shopping center prior to December 7, 1983. Some version of a contract was in existence, whether oral or a written, unexecuted draft contract which served as a memorandum of understanding. The fact that a modified written contract may have been executed at some point in 1984, when additional changes as to work, payments, and other matters were made, does not mean that plaintiff was not performing architectural services pursuant to an agreement reached prior to December 7, 1983. The parties had an understanding as to what work was going to be done and what was going to be paid, and those terms provided the terms of a contract. Absent any contract whatsoever at the time the architectural services were being performed, plaintiff would not be able to assert a claim under the mechanics lien statute. Although the draft contract dated December 7, 1983, may not have been signed on that date, the parties do not dispute that they complied with it as to their understanding of their agreement until it was supplanted by a modified one.

Page 8 of the signed contract dated December 7, 1983, contains a listing of the various stages at which payments would be made for architectural work. Those stages include, among others, the Schematic De-

sign Phase, the Design Development Phase, and the Construction Documents Phase. It is clear the parties contemplated that the work being done pursuant to the schedule was all architectural work. The Schematic Design Phase work began in 1982. The Construction Documents Phase (the third category), at which time 45% of the total payment was to be received, was ongoing in December of 1983. For the first three stages of the work (Schematic Design, Design Development, and Construction Documents), 80% of the architectural work was to have been completed, billed, and paid for, with only 20% remaining on the last two phases (Bidding or Negotiations Phase and Construction Phase).

By December, 1983, and most certainly by June 12, 1984, when the plaintiff corporation was registered, at least 80% of plaintiff's work was completed. By September, 1984, when the actual architect's seal was applied to the work product, 90% or more was completed.

In addition, the mechanics lien filed by plaintiff shows that substantially all of the work was performed before plaintiff was registered. In summary, the body of plaintiff's mechanics lien states: architectural services began December 8, 1982; services ended October 30, 1985; work was performed pursuant to a contract dated December 7, 1983; the first invoice listed was dated January, 30, 1983; the last invoice was dated January, 3, 1986; and the total balance claimed was $801,722.31.

Approximately $700,000 of the total amount claimed by plaintiff was actually billed prior to June 12, 1984. Since all of the services by plaintiff on the project were architectural, the court rejects the argument that there was no actual architectural work done until after June 12, 1984.

Having concluded that the issue of when a written contract was actually signed is not a material fact, the court now determines whether defendants are entitled to judgment in their favor as a matter of law.

As previously stated, defendants argued they are entitled to summary judgment as a matter of law because plaintiff, by reason

of not being registered to practice architecture in Missouri at the time it entered into a contract to perform architectural services and performed those services, is precluded from filing and enforcing a mechanics lien pursuant to Mo.Rev.Stat. § 429.015, and is also precluded from enforcing said contract pursuant to Mo.Rev.Stat. § 327.461.

Mo.Rev.Stat. § 429.015.1 provides in pertinent part:

> Every registered architect or corporation registered to practice architecture ... who does any architectural ... work upon or performs any architectural ... service directly connected with the erection or repair of any building or other improvement upon land under or by virtue of any contract with the owner or proprietor thereof, or his agent, trustee, contractor or subcontractor, upon complying with the provisions of this chapter, shall have for his architectural ... work or service so done or performed, a lien upon the building or other improvements and upon the land belonging to the owner or proprietor on which the building or improvements are situated....

In essence, the statute provides that a registered architect who performs architectural services pursuant to a contract with the owner may obtain a mechanics lien. Conversely, an unregistered architect who performs architectural services pursuant to a contract with the owner cannot obtain a mechanics lien.

The Missouri Supreme Court has addressed this issue in *Maran–Cooke, Inc. v. Purler Excavating, Inc.,* 585 S.W.2d 38 (Mo. banc 1979). Although the case dealt with professional engineering services rather than architect services, the statutory authorizations and licensing requirements are identical and indistinguishable. In *Maran–Cooke,* an engineering corporation failed to register in Missouri before performing engineering services. The Supreme Court held that the statute requires that a certificate of authority must be obtained by a corporation before it can be given a lien.

The Court noted that Mo.Rev.Stat. § 429.015 was amended in 1988 to provide that a corporation is deemed registered if any officer thereof, who owns more than 50% of the capital common stock of such corporation is individually registered. However, this amendment does not affect the case at bar because the amendment was not in effect while plaintiff was performing the architectural services, and even if the amendment did apply retroactively, Mr. MacLean does not own more than 50% of the stock of plaintiff.

The licensing requirements for architects and architectural corporations are set forth in Chapter 327 of the Revised Statutes of Missouri. Section 327.101 prohibits individuals and corporations from providing architectural services in Missouri unless they are registered in Missouri. Section 327.091 broadly defines the practice of architecture to include the services provided by plaintiff in the development of the Branson Mall. The unauthorized practice of architecture is criminally punishable as a Class A misdemeanor pursuant to § 327.111. Section 327.401.2 sets forth the registration requirements for architectural corporations. The final pertinent provision, § 327.461, provides that every contract for architectural services entered into by an unregistered architect shall be unenforceable by an unregistered architect.

*Haith & Company, Inc. v. Ellers, Oakley, Chester & Rike, Inc.,* 778 S.W.2d 417 (Mo.App.1989), which dealt with same issue under § 327.461, is precisely on point on the law and the facts. In *Haith,* a Tennessee professional engineering firm had a president and chairman of the board who were both individually registered in Missouri as professional engineers, but the corporation in Tennessee was not registered in Missouri. The corporation entered into contracts to do work at Kansas City International Airport. The two individuals, who were president and chairman of the board and were Missouri licensed professional engineers, affixed their professional engineering seals to the plans and specifications. Subsequently, disputes arose over the contracts and the performance, and the engineers sought to enforce the mandatory arbitration clause in the

contracts. During the dispute over the arbitration clause, it was discovered that only the individuals and not the engineering corporation were registered in Missouri. Upon learning of the registration requirement, the corporation immediately took steps to become registered.

The Court of Appeals held the unregistered corporation was precluded from enforcing the contract, even though the plans had been approved by individuals who were properly licensed. The Court also rejected the argument that the corporation had substantially complied with the registration requirement by applying for and obtaining the necessary authorization as soon as the deficiency was called to attention. The Court stated that the statute requires strict observation, and there is no provision for later cure for the violation. Thus, it was held that the corporation's contract was unenforceable and that it was not possible to retroactively make the unenforceable contract valid by registering late.

The facts in *Haith* indicate it was not a conscious decision that the corporation did not become registered. The situation in the present case is more extreme because plaintiff began performing architectural services in Missouri in 1982 without taking steps to secure registration, and with full knowledge that it was not registered, that it was required to be registered, and that failure to register was a violation of Missouri law.

*N.P. Sandbothe v. Williams*, 552 S.W.2d 251 (Mo.App.1977), supports the holding that plaintiff cannot validate the contract and mechanics lien by registering subsequent to entering into the contract and performing architectural services. Although the case dealt with the licensing requirements for real estate brokers and salespersons, the statutory provisions and licensing requirements are sufficiently similar to provide a helpful analogy. In *Sandbothe*, the fact that the plaintiff obtained a brokers license prior to the closing of sale did not allow the plaintiff to recover compensation for services rendered. The contract was held to be void and unenforceable.

■ Based on a review of the applicable statutes and case law, the court holds that plaintiff, being unregistered while performing architectural services pursuant to a contract, is prohibited from enforcing a mechanics lien and the contract itself. Mo. Rev.Stat. §§ 429.015.1 and 327.461; *Maran–Cooke, Inc. v. Purler Excavating, Inc.*, 585 S.W.2d 38 (Mo. banc 1979); *Haith & Company, Inc. v. Ellers, Oakley, Chester & Rike, Inc.*, 778 S.W.2d 417 (Mo.App. 1989).

Assuming that the court believed that the mechanics lien claim was good prospectively from the date the corporation became registered on June 12, 1984, defendants would still be entitled to summary judgment. As previously stated, the bulk of the work—approximately $700,000—was performed prior to June 12, 1984, and would not be allowed by law since registration could only be prospective. After deduction of the Engineering Design and Management settlement of $125,000, the amount requested by plaintiff is reduced to $675,000, thus eliminating the entire claim.

Plaintiff made numerous arguments as to why summary judgment in favor of defendants as a matter of law is inappropriate. For the following reasons, the court rejects plaintiff's arguments.

First, plaintiff argued that it did not practice architecture in Missouri, and that Mo.Rev.Stat. § 327.461, when read in context with the rest of Chapter 327, does not apply to the case at bar. However, based on this court's reading of Chapter 327, there is no doubt that plaintiff was practicing architecture in Missouri as broadly defined in Mo.Rev.Stat. § 327.091. Based on the facts of this case, it is clear that plaintiff rendered, offered to render, and represented itself as willing or able to render the types of services set forth in § 327.091. It is undisputed that plaintiff through its employees traveled to Missouri and performed substantial and prolonged architectural services in Missouri for a mall development located in Missouri. The fact that there may have been several contacts in Arizona does not relieve plaintiff of the necessity to register in Missouri where plaintiff per-

formed substantial architectural services for a commercial development located in Missouri. The public protection concerns underlying Chapter 327 were clearly intended to cover plaintiff's activities in Missouri.

Plaintiff asserted that Mo.Rev.Stat. § 429.015.1 and *Maran–Cooke* have no application to the case at bar because plaintiff had been registered for nearly two years at the time it filed its mechanics lien. In essence, plaintiff attempted to characterize the holding of *Maran–Cooke* as limited to situations where a corporation is not registered at the time the lien is filed. However, plaintiff's characterization is not consistent when considered in light of § 327.461 and *Haith*, which invalidate contracts entered into by unregistered architects.[4] If plaintiff's characterization of *Maran–Cooke* and § 429.015.1 were accepted, plaintiff would be able to assert and enforce a mechanics lien while at the same time it would be unable to enforce the contract. The court rejects plaintiff's argument, and holds that plaintiff must be registered at the time architectural services are performed pursuant to a contract in order to assert a mechanics lien or to enforce the contract.

Plaintiff argued that *Haith* is not controlling and is factually distinguishable. Plaintiff asserted that the present case differs from *Haith* in that plaintiff was registered before it submitted any sealed work. This factual distinction is irrelevant as it may relate to plaintiff's arguments that it was not practicing architecture with the meaning of § 327.091 until the documents were sealed, or that § 327.461 is inapplicable because it was registered at the time the documents were sealed. Section 327.091 does not define the practice of architecture as solely centered around the date the documents were sealed. Section § 327.461 does not make an exception for one who registers before the documents are sealed. Instead, the fact relevant to the statute is when the contract is entered into. The Court of Appeals in *Haith*, 778

S.W.2d at 421, stated: "[Section] 327.461 is preclusive and does not provide that a later cure of a Chapter 327 violation allows an engineering corporation to thereafter enforce contracts made while it was unregistered or unauthorized."

Plaintiff argued that it substantially complied with the registration requirements of Chapter 327 so that a corporation substantially complying with registration requirements may enforce all contracts entered into in Missouri. The doctrine of substantial compliance as it relates to registration requirements was specifically rejected in *Haith*, 778 S.W.2d at 421. This court agrees with *Haith's* reasoning and conclusion that "§ 327.461 is preclusive and does not provide that a later cure of a Chapter 327 violation allows an [architectural] corporation to thereafter enforce contracts made while it was unregistered or unauthorized." Section 327.461 is clear on its face that registration is mandatory and makes no exception for less than technical or literal compliance.

■ Plaintiff also asserted that defendants are equitably estopped from arguing that the contract and mechanics lien are unenforceable in that Harvey Nutt, a representative of the original owner, Ozark Mountain County Mall, Inc., entered into the contract with knowledge that plaintiff was not registered and did not object that plaintiff was not registered. Thus, plaintiff argued that estoppel should operate against defendants pertaining to work on a large commercial project where innocent members of the public enter, trusting that the state has insured that competent professionals, qualified under law, designed and constructed a safe building.

Plaintiff's estoppel argument attempts to shift the responsibility for nonregistration to another party. The court rejects this argument and holds that plaintiff is solely responsible for complying with the registration requirements. Plaintiff began performing architectural services for the de-

**4.** The Supreme Court in *Maran–Cooke*, at footnote 3, page 40, stated that it was unnecessary to consider the effect of § 327.461 because the corporation was not registered at the time it filed its mechanic's lien.

velopment in 1982 knowing that it was required to be registered in Missouri. Yet, despite this knowledge, plaintiff did not obtain the necessary authorization to practice architecture until June 12, 1984.

In essence, plaintiff would have this court create an exception to the registration requirement where all parties to the contract are aware that the architectural corporation is not authorized to practice in Missouri. The statutory provisions of Chapter 327 are clear as to the necessity to register and create no such exception. Therefore, this court declines to create precedent contrary to Chapter 327 which would allow unregistered architects to enforce contracts and mechanics liens by merely informing clients that they are not registered.

Lastly, plaintiff suggests that despite its failure to comply with Missouri registration and mechanics lien statutes, this court should rely on its equitable powers to allow plaintiff to enforce the contract and mechanics lien to insure that no injustice or unfairness occurs. The court acknowledges the harsh result to plaintiff in denying plaintiff the right to enforce the mechanics lien and contract. However, the Missouri legislature has clearly mandated that contracts and mechanics liens are unenforceable by unregistered architects. As stated by the Missouri Supreme Court, equitable "principles cannot override the mandate of the legislature in § 429.015 that only authorized corporations may have a lien, and it is to that branch of government that arguments concerning the wisdom and equity of the statute should be addressed." *Maran–Cooke*, 585 S.W.2d at 41[6].

In sum and substance, the contract is unenforceable, illegal, and void pursuant to § 327.461 and cannot be the foundation for a mechanics lien pursuant to § 429.015.

██ As to a possible argument of quantum meruit by plaintiff, it is first noted that no Count for quantum meruit recovery has been pleaded. Additionally, pursuant to *Sandbothe*, 552 S.W.2d at 255, quantum meruit will not lie based on the well settled principle that no court will lend its aid to a cause of action founded upon an illegal act.

It is not appropriate to enforce a quantum meruit recovery in favor of the party who knowingly enters into an illegal contract such as the real estate broker's contract in *Sandbothe*.

The State of Missouri is entitled to regulate the practice of architecture in order to insure that buildings are safely designed and constructed and that the public is thus protected. Although dictating a harsh result in this particular case, this result is proper under state law, and it is again noted that plaintiff in this case consciously chose to disregard the Missouri registration laws which this court is' required to recognize and enforce.

As to Count I to enforce the mechanics lien, the court holds that plaintiff has no enforceable mechanics lien and no enforceable contract. In addition, no basis exists to grant quantum meruit relief. Since there is no enforceable contract, Counts II and III, alleging breach of contract, must also fail. Count III, after review and comparison to Counts I and II, purports to allege a cause of action on two contracts because of a separate letter agreement. However, it is still a suit on the same contract to pay the same architectural fee under the unenforceable contract. Therefore, defendants are entitled to a judgment on Count III.

Accordingly, for the foregoing reasons, it is hereby ORDERED, ADJUDGED AND DECREED as follows:

1. On Counts I, II and III of plaintiff's Second Amended Petition, judgment is hereby entered in favor of defendants and against plaintiff, and plaintiff shall take nothing on said counts.

2. Costs are assessed against plaintiff.