In re BRANSON MALL, INC., Debtor.

**CHARLES C. MacLEAN, III,
ARCHITECT, LTD.,**
Appellant,

v.

**OZARK MOUNTAIN COUNTRY MALL,
INC.; Branson Mall, Inc.; Phillip L.
Roper; Daniel J. O'Connell; United
Southwest Service Agency, Inc.,** Appellees,

**Karen Rea Maupin,**

**United Savings and Loan
Association,** Appellee,

**Bruce Kirby, James Olson.**

No. 91–3075.

United States Court of Appeals,
Eighth Circuit.

Submitted April 13, 1992.
Decided July 17, 1992.

Steven W. Garrett, St. Louis, Mo., argued, for appellant.

Gary W. Allman, Branson, Mo., argued (Mark E. Gardner, Springfield, Mo. and Peter H. Rea, Branson, Mo., on briefs), for appellee.

Before FAGG, Circuit Judge, HENLEY, Senior Circuit Judge, and WOLLMAN, Circuit Judge.

WOLLMAN, Circuit Judge.

Charles C. MacLean, III, Architect, Ltd., appeals from the district court's [1] order affirming the bankruptcy court's [2] grant of summary judgment in favor of Ozark Mountain Country Mall, Inc., et al. We affirm.

## I.

In 1986, Charles C. MacLean, III, Architect, Ltd., (MACLEAN), an Arizona corporation, filed a state court petition to enforce a statutory lien for architectural services rendered from December 1982 through October 1985 in connection with the construction of the Ozark Mountain Country Mall, located in Taney County, Missouri. The contract to perform the architectural services is dated December 7, 1983, and MACLEAN had submitted bills for approximately $700,000 in services prior to June 12, 1984. MACLEAN's petition claims a lien for approximately $800,000.[3]

---

1. The Honorable Russell G. Clark, United States Senior District Judge for the Western District of Missouri.

2. The Honorable Karen M. See, United States Bankruptcy Judge for the Western District of Missouri.

3. MACLEAN's claim was reduced by the bankruptcy court to approximately $675,000.00 because defendants settled with Engineering Design and Management, Inc., (EDM) for $125,-000.00. EDM's claim was encompassed in MACLEAN's statutory lien.petition.

The petition also raises two claims based upon breach of contract, each for approximately $800,000.

The subsequent purchaser of the real estate development filed a Chapter 11 bankruptcy petition. With MACLEAN's consent, all pending state statutory lien litigation was removed to the bankruptcy court. Ozark Mountain Country Mall, Inc. and the other defendants (defendants) moved for summary judgment. They argued that because MACLEAN was not registered to practice architecture in Missouri when it entered into the contract to provide the architectural services, 1) it was precluded from enforcing a statutory lien pursuant to section 429.015, R.S.Mo. (1986); and 2) it was precluded from enforcing any contracts pursuant to section 327.461, R.S.Mo. (1986). The bankruptcy court granted summary judgment in favor of defendants, 120 B.R. 1006, and the district court affirmed.

On appeal, MACLEAN argues that summary judgment was improper because genuine issues of material fact exist. Alternatively, MACLEAN argues that the district court erred by concluding that MACLEAN is precluded, as a matter of law, from enforcing its statutory lien or contract claims arising from the architectural services provided.

## II.

The Missouri lien statute at issue provides:

> *Every* registered architect or *corporation registered to practice architecture* ... *who does any* ... *architectural* ... *work upon or performs any* ... *architectural* ... *service* directly connected with the erection or repair of any building or other improvement upon land *under or by virtue of any contract with the owner* or proprietor thereof, ... *shall have* for his ... architectural ... work or service so done or performed, *a lien* upon the building or other improvements and upon the land belonging to the owner or proprietor on which the build-

ing or improvements are situated, to the extent of one acre.

§ 429.015., R.S.Mo. (emphasis added).

Section 327 of the Missouri statutes sets forth the licensing and other requirements for corporations practicing architecture in Missouri. Section 327.091 defines the practice of architecture. Section 327.101 prohibits corporations from practicing architecture in Missouri unless they are registered; Section 327.111 makes the unregistered practice of architecture a class A misdemeanor. Section 327.461 renders contracts to perform architectural services entered into by unregistered corporations unenforceable by those corporations.

## III.

■ MACLEAN first argues that summary judgment was improper because genuine issues of material fact exist. *See* Fed. R.Civ.P. 56; Bankr.R. 7056. Specifically, MACLEAN contends that a fact question remains with respect to when it entered into the contract to perform architectural services. It maintains that the contract was not executed until after June 12, 1984, the date on which MACLEAN became a registered corporation under Missouri law. The bankruptcy court determined that this apparent factual dispute was not material. The material issue to be decided on summary judgment, according to the court, was whether MACLEAN could enforce a statutory lien under Missouri law for architectural services performed in connection with the real estate development.

Among other things, the bankruptcy court's decision in this regard was predicated on the undisputed fact that MACLEAN's petition claimed a lien for architectural services beginning in December 1982. MACLEAN had submitted bills for more than $700,000 of the total lien amount prior to June 12, 1984. Prior to this date, the court reasoned, there was at least some understanding as to the terms of the agreement between the parties. Assuming that there was a contract, therefore, MACLEAN would have no lien because it performed the services under the contract

while it was unregistered. § 429.015, R.S.Mo.

■ Even if there had been no contract between the parties at the time the architectural services were being rendered, the bankruptcy court noted, MACLEAN would still not have been able to enforce a statutory lien under the Missouri statute because the existence of a contract is a precondition to obtaining a lien.[4] *See* Bankruptcy Court Order Granting Motion For Summary Judgment (Bankr.Ct.Order) 120 B.R. at 1010; *see also* § 429.015.1, R.S.Mo. ("Every ... corporation registered to practice architecture ... who does any architectural ... work ... *under or by virtue of a contract* ... shall have ... a lien."). Thus, the court reasoned, either there was a contract for architectural services on which to enforce a claim for a statutory lien, or there was not.[5] In either case, MACLEAN had no enforceable lien.

■ We agree with the bankruptcy court's analysis and conclusion. The date the contract was signed is not material to whether MACLEAN could enforce a statutory lien. The conduct of the parties clearly indicates that they were operating pursuant to an agreement to provide architectural services. Indeed, the bankruptcy court's finding that the parties were operating pursuant to an agreement prior to June 12, 1984, is supported by the fact that the contract is dated December 7, 1983. This date was not changed when, as MACLEAN alleges, MACLEAN later formally executed the contract with the defendants. Moreover, we note that MACLEAN's petition seeks a statutory lien for work performed prior to June 12, 1984. Thus, "[s]ome version of a contract was in existence, whether oral or a written, unexecuted draft contract which served as a memoran-

dum of understanding" between the parties prior to June 12, 1984. *See* Bankr.Ct. Order at 1010. Because no genuine issue of material fact existed with respect to the issues to be decided, the bankruptcy court correctly determined that it could decide them as a matter of law. *See Olson v. Pennzoil Co.*, 943 F.2d 881, 883 (8th Cir. 1991).

## IV.

■ Next, MACLEAN argues that the bankruptcy court erred by finding that defendants are entitled to judgment as a matter of law. In Count I of its petition, MACLEAN sought to enforce a statutory lien for architectural services rendered in connection with the development project. The bankruptcy court held that since MACLEAN was not a registered Missouri architectural corporation at the time it began rendering these services to defendants, it could not avail itself of the lien provision of section 429.015. *See Maran–Cooke, Inc. v. Purler Excavating, Inc.*, 585 S.W.2d 38 (Mo. banc 1979) (engineering firm could not utilize the lien provision of section 429.015 without obtaining state registration).[6]

MACLEAN argues, however, that because the plaintiff in *Maran–Cooke* never obtained proper registration before attempting to invoke the lien statute, that decision does not dictate the outcome in this case. MACLEAN contends that because it obtained the proper corporate registration approximately two years before it filed its statutory lien petition, it should be able to enforce a statutory lien even though it was unregistered when it began performing architectural services under the contract.

---

4. Throughout its opening and reply brief, MACLEAN seems to argue that pre–1984 architectural services were being performed by Charles C. MacLean, an individual. Mr. MacLean was a properly registered Missouri architect as of 1980. As Mr. MacLean is not a party to this action, however, we fail to see the relevance of MACLEAN's arguments in this regard.

5. The bankruptcy court noted that MACLEAN's "allegation [that the contract was entered into

after June 12, 1984] is contrary to all of [MACLEAN's] previous pleadings, exhibits, affidavits, and depositions, in which [MACLEAN] consistently stated that [MACLEAN] entered into the contract on or about December 7, 1983." *See* Bankr.Ct. Order at 1009.

6. The lien authorization for engineering corporations is also section 429.015.

■ The bankruptcy court did not rest its holding exclusively on *Maran–Cooke.* Rather, the bankruptcy court analyzed section 429.015 and the manner in which this provision was interpreted by the Missouri Supreme Court: "The Supreme Court [in *Maran–Cooke*] held that the statute requires that a certificate of authority must be obtained by a corporation before it can be given a lien." Bankr.Ct. Order at 1011. MACLEAN, of course, reads this language to allow an architectural firm to perform architectural services prior to registration, to later become properly registered, and then to seek a lien for services performed while unregistered. While *Maran–Cooke's* language does not explicitly foreclose MACLEAN's interpretation, section 429.015 itself does. "Every ... corporation registered to practice architecture ... who does any architectural ... work ... under or by virtue of a contract ... shall have ... a lien." § 429.015.1, R.S.Mo.; *cf. Maran–Cooke,* 585 S.W.2d at 39 ("[A]ny corporation constituting the medium of practice for professional engineers must obtain a 'certificate of authority' in order to offer engineering services."). This language contemplates that in order to be eligible for a lien, an architectural firm must be registered before performing any architectural services.

Likewise, section 327's provisions contemplate that registration precede the performance of architectural services: "No person shall practice architecture in Missouri ... unless and until there is issued to him a certificate of registration or a certificate of authority...." § 327.101, R.S.Mo. "Any person who practices architecture in Missouri ... who is not the holder of a currently valid certificate of registration to practice architecture in Missouri ... is guilty of a class A misdemeanor." § 327.111, R.S.Mo. Finally, "[e]very contract for architectural ... services entered into by any person who is not a registered or authorized architect ... shall be unenforcea-

ble by the unregistered or unauthorized architect." § 327.461, R.S.Mo. These provisions manifest the Missouri legislature's intention that unregistered architects not be permitted to benefit from the lien statute.

■ MACLEAN argues that even under the bankruptcy court's analysis, however, it should be entitled to enforce a statutory lien for approximately $100,000. This amount represents the amount of architectural services billed after MACLEAN became properly registered. Specifically, MACLEAN challenges the bankruptcy court's reliance upon *Haith & Co., Inc. v. Ellers, Oakley, Chester & Rike, Inc.,* 778 S.W.2d 417 (Mo.Ct.App.1989), to support its conclusion that MACLEAN's subsequent registration did not validate its claim for a statutory lien. In *Haith,* an unregistered engineering corporation was precluded under section 327.461[7] from enforcing engineering contracts entered into the while it was unregistered, even though it subsequently obtained the proper registration.

The bankruptcy court observed that the *Haith* court "held that the corporation's contract was unenforceable [under section 327.461] and that it was not possible to retroactively make the unenforceable contract valid by registering late." Bankr.Ct. Order at 1012. That is exactly what MACLEAN has attempted to do with respect to its statutory lien claim. If MACLEAN's position were accepted, the bankruptcy court noted, MACLEAN "would be able to assert and enforce a [statutory] lien while at the same time it would be unable to enforce the contract." *Id.* at 1013. We agree that Missouri law does not allow this result. *Cf. Sandbothe v. Williams,* 552 S.W.2d 251 (Mo.Ct.App.1977) (real estate contract held void and unenforceable when entered into by real estate broker who became properly licensed just prior to closing). We therefore hold that MACLEAN's lien claim must be rejected in its entirety.[8]

---

7. Section 327.461 applies to engineering corporations as well as architectural corporations.

8. Alternatively, the bankruptcy court determined that because MACLEAN's claim was reduced to less than $700,000, *see supra* note 3,

the claim was properly dismissed in its entirety. Because of our holding herein, we need not address the accuracy of this determination by the bankruptcy court.

## V.

■ MACLEAN alleged breach of contract in Counts II and III of its petition. The bankruptcy court held that the contracts were unenforceable under section 327.461. MACLEAN contends, however, that section 327.461 should not apply to it because it is an Arizona corporation and was not practicing architecture in Missouri. The bankruptcy court disagreed, holding that MACLEAN was practicing architecture in Missouri as defined in section 327.-091.

> Any person practices architecture in Missouri who renders or offers to render or represents himself as willing or able to render service or creative work which requires architectural education, training and experience, including services and work such as consultation, evaluation, planning, aesthetic and structural design, the preparation of drawings, specifications and related documents, and the coordination of services furnished by structural, civil, mechanical and electrical engineers and other consultants as they relate to architectural work in connection with the construction or erection of any private or public building, building structure, building project or integral part or parts of buildings or of any additions or alterations thereto.

§ 327.091, R.S.Mo. MACLEAN's petition states that it rendered architectural services to defendants in connection with the construction and improvement of buildings in Taney County, Missouri from December 1982 through October 1985. *See* MACLEAN's Second Amended Petition at 13. Under section 327.091, these activities constitute the practice of architecture. Thus, we agree with the bankruptcy court that "there is no doubt that [MACLEAN] was practicing architecture in Missouri." Bankr.Ct. Order at 1012.[9]

## VI.

■ In 1988, section 429.015, was amended to read: "a corporation engaged in the practice of architecture ... shall be deemed to be registered if ... any officer thereof, who owns more than fifty percent of the capital common stock of such corporation, is registered under the laws of this state as an architect." In his deposition, Charles C. MacLean, a registered Missouri architect since 1980 and president of MACLEAN, testified that he was the major stockholder of MACLEAN, and that his wife "bears the other fifty-percent." Deposition of Charles C. MacLean at 8. In an affidavit, MacLean stated that he was a "50% stockholder" in MACLEAN.

For the first time on appeal, MACLEAN has produced certain corporate records that purport to establish that MacLean and his wife jointly own 100% of MACLEAN's stock. Since MacLean is a joint 100% owner of the stock, MACLEAN argues, "[i]t would be an injustice not to allow [MAC-LEAN] to proceed with its claim as no legal significance should attach to MacLean's characterization of his stock ownership in [MACLEAN]."

Defendants characterize MACLEAN's argument here as an attempt to introduce newly discovered evidence for the first time on appeal. Under Federal Rule of Civil Procedure 60(b), defendants claim, MACLEAN's claim should be rejected because the evidence of the stock ownership was available to MACLEAN prior to defendants' motion for summary judgment. *See Kansas City Area Transp. Auth. v. Missouri,* 640 F.2d 173, 175 (8th Cir.1981). MACLEAN responds that because MacLean said he was a major stockholder and his wife "bears the other 50%," and because Arizona is a community property state, the bankruptcy court should have intuited that MacLean owns 100% of the stock jointly with his wife.

The bankruptcy court had before it sworn statements from MacLean that he was a fifty-percent stockholder in MACLEAN. It does not matter for our purposes why MACLEAN did not come forward earlier with the evidence of Mac-

---

**9.** MACLEAN contends that "[i]f th[is] court finds in favor of [MACLEAN] on Points I and/or II," the separate contract action it alleged in Count III is revived. Because we affirm the bankruptcy court's judgment in all respects, we need not address this contention.

Lean's possible 100% ownership of the stock. Whether that reason is newly discovered evidence, Fed.R.Civ.P. 60(b)(2), mistake, inadvertence, or excusable neglect, Fed.R.Civ.P. 60(b)(1), or fraud or misrepresentation, Fed.R.Civ.P. 60(b)(3), the same result obtains. Under Rule 60(b), the party must move for relief from the judgment on any of these grounds within one year after the judgment was entered. No such motion has been made, and more than one year has passed. We therefore reject MACLEAN's contention that the amended version of section 429.015 should apply to it.

### VII.

 MACLEAN claims that the bankruptcy court erred by refusing to use its equitable powers to validate MACLEAN's claims and avoid injustice. MACLEAN relies upon *In re Spanish Trails Lanes, Inc.*, 16 B.R. 304 (Bankr.D.Ariz.1981), in which the court refused to deny an unlicensed contractor's contract claim for services rendered, despite state law that made it unlawful for a person to engage in business as a contractor without a license and denied unlicensed contractors judicial relief in the state courts. In determining that Arizona law did not nullify the contractor's claim, the *Spanish Trails* court noted that "no remedy or penalty is provided except for that imposed by A.R.S. § 32–1153 which merely denies contractors judicial relief in Arizona courts." *Id.* at 307.

Whatever the interpretation of Arizona law by the *Spanish Trails* court, Missouri law renders unenforceable contracts entered into by an unregistered architect. § 327.461, R.S.Mo.; *Haith & Co.*, 778 S.W.2d at 421 ("The import of § 327.461 is mandatory unenforceability of such contracts."). Moreover, any architect who practices in Missouri without first registering is guilty of a class A misdemeanor. § 327.111, R.S.Mo. Because the Missouri legislature has clearly expressed its policy with regard to unregistered architects, we do not find *Spanish Trails* persuasive. As noted by the bankruptcy court, equitable "principles cannot override the mandate of the legislature in § 429.015 that only authorized corporations may have a lien, and it is to that branch of government that arguments concerning the wisdom and equity of the statute should be addressed." *Maran–Cooke*, 585 S.W.2d at 41.

MACLEAN's remaining arguments are rejected as without merit.

The order affirming the bankruptcy court's decision is affirmed.