HOSPITAL DEVELOPMENT
CORPORATION,
Appellant,

v.

PARK LANE LAND COMPANY, et
al., Henry L. Dire', Dr. Myral
C. Coatney, Respondents.

No. WD 43221.

Missouri Court of Appeals,
Western District.

July 16, 1991.

As Modified Aug. 22, 1991.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Aug. 27, 1991.

R. Frederick Walters and Kip D. Richards, Linde, Thompson, Langworthy, Kohn & Van Dyke, P.C., Kansas City, for appellant.

Thomas E. Thompson, Beamer, Slagg, McCormick & Thompson, Kansas City, for Park Lane Land Co. and its doctors.

Charles W. Nichols, Kansas City, for Henry L. DiRe'.

Dr. Myral C. Coatney, pro se.

Before TURNAGE, P.J., and LOWENSTEIN and BRECKENRIDGE, JJ.

BRECKENRIDGE, Judge.

Plaintiff-appellant Hospital Development Corporation brought this action against Park Lane Land Company and other defendants based upon contract, quantum meruit and account stated for nonpayment of architectural services. Summary judgment for defendants was entered from which this appeal was presented. The judgment is affirmed.

Hospital Development Corporation ("HDC") seeks to recover payment for certain architectural and other related services it claims were provided to and incurred on behalf of Park Lane Land Company ("Park Lane") in preparation for development of a medical office building in Kansas City, Missouri. This building project never came to fruition. A separate entity, unrelated to Park Lane, purchased the land from Park Lane and constructed its own medical office building.

HDC is a Missouri corporation wholly owned by URS Corporation, a California company that was authorized to do business in this state. HDC has never held a certificate of authority to practice architecture in Missouri pursuant to § 327.171, RSMo 1986, and § 327.401, RSMo 1986.[1] URS Corporation also owned a second Missouri corporation, Hewitt & Royer, Inc. ("Hewitt & Royer"). HDC provided architectural services to its clients through Hewitt & Royer, its sister subsidiary. At the time the architectural services at issue were provided, Hewitt & Royer held a corporate certificate of authority to offer architectural services in Missouri. The corporate charter of Hewitt & Royer, was forfeited November 11, 1983, and the corporation was subsequently dissolved.

Thirty doctors entered into a joint venture agreement on December 29, 1975, under the name of Park Lane Land Company. The agreement is on record in the Jackson County Recorder of Deeds Office, at Independence. The purpose as stated in the joint venture agreement was "to own one

---

certain tract of real estate for investment purposes with the possibility of developing same." The named defendants, other than Park Lane and Henry L. DiRe', are the individual doctors who were parties to the joint venture agreement.

In the year it was formed, Park Lane purchased an acreage in Jackson County, Missouri, which was later subdivided into three lots. In December of 1975, Park Lane donated the middle lot to Park Lane Medical Center of Kansas City, Inc. The donated lot was used, in part, for the construction of Park Lane Medical Center, Inc. ("PLMC"), a hospital designed by Hewitt & Royer. The parcels of land on each side of PLMC were intended for construction of buildings which would complement the hospital, such as a medical office building and a nursing home.

Henry L. DiRe' is an individual who served as a consultant to PLMC in connection with the development of the hospital and its initial administration. Initially, DiRe' served as a representative of Kansas City Medical Center, Inc., a group of physicians desiring construction of a hospital, with respect to the initial feasibility survey regarding PLMC. It was through his involvement with PLMC that DiRe' became acquainted with Richard Johnson, an employee of Hewitt & Royer as Architectural Group Manager.

Shortly after construction started on PLMC, discussion began among Park Lane, PLMC, DiRe' and Richard Johnson concerning the development of a physicians' office building. These discussions ultimately lead to an agreement allegedly between HDC and Park Lane under which HDC would develop and construct a professional medical building. In accordance with the agreement, and subsequently amended agreements providing for the construction of the building by a developer other than HDC, Hewitt & Royer provided services in the amount of $52,072.93. The professional medical building was never built with the use of any plans or drawings supplied by Hewitt & Royer. In 1979, HDC demanded payment of $52,072.93, which fee was to be calculated on seven percent of the cost of construction as bid by the contractor. When Park Lane refused to remit payment, HDC filed a lawsuit.

In its Amended Petition for Damages, HDC alleges that Park Lane breached the letter agreements, signed by Henry L. DiRe' (DiRe'), under which HDC provided, through its sister subsidiary, Hewitt & Royer, services both architectural and non-architectural; that Park Lane was unjustly enriched by refusing to remit payment for those services; and that there was an account stated between HDC and Park Lane that Park Lane agreed to pay.

The ten-year history of the lawsuit is that HDC originally filed its petition against Park Lane and its individual doctors on June 26, 1981. The case had been on file for five years when, on the date of the first trial, Park Lane's motion to dismiss was granted, without prejudice, because HDC's charter had been forfeited and HDC had no authority to sue. Within a month HDC's corporate charter was reinstated. On July 2, 1986, HDC moved the circuit court to vacate its June 2, 1986 order and permit HDC to voluntarily dismiss its lawsuit, without prejudice. This motion was granted.

HDC then refiled an identical lawsuit, being the case now on appeal, against Park Lane and its partners on October 22, 1986. Discovery in the refiled lawsuit continued. HDC was granted leave to amend its petition in the refiled lawsuit and on July 9, 1987 amended its petition adding Henry L. DiRe' as a party defendant.

The matter was set for trial a second time on February 13, 1989. On this date a jury was empaneled and HDC began to present its case. On the fourth day of trial, Respondents orally moved for dismissal of HDC's claims raising a defense under §§ 327.401 and 327.461 for the first

time [2]. This defense had not been pleaded. The court declared a mistrial on grounds not articulated. Afterwards, Park Lane and DiRe' filed motions for leave to file amended answers asserting that HDC was not a licensed architect in this state and, therefore, any contract entered into by it was unenforceable pursuant to § 327.461. The circuit court granted the motions. Thereafter, Park Lane and DiRe' filed Motions for Summary Judgment, which were granted by the trial court. This timely appeal followed.

Appellant HDC presents two points on appeal. In point one, HDC asserts the trial court abused its discretion by permitting Respondents Park Lane and DiRe' to amend their answers and assert a licensure defense under § 327.461, because the court's decision worked a substantial hardship on HDC and wholly subverted the interests of justice. In its second point, subdivided, HDC contends the trial court erred in granting respondents' motions for summary judgment because, as a matter of law, HDC is entitled to recover payment for those non-architectural services and expenses provided to and incurred on behalf of Park Lane and/or to recover the reasonable value of the services provided to Park Lane under principles of quantum meruit. HDC further contends there was a genuine issue of material fact as to its claim that Henry L. DiRe' had authority to bind Park Lane in an agreement with HDC. This court notes that Respondent Dr. Myral C. Coatney has filed no brief on appeal, nor are any points raised by HDC regarding Dr. Coatney.

In point I, HDC contends the trial court abused its discretion in allowing respondents to amend their answers. As stated in *Vonder Haar Concrete Co. v. Edwards–Parker*, 561 S.W.2d 134, 138 (Mo.App.1978):

On appeal from a trial court's discretionary ruling it is presumed that the ruling is correct, and the burden of showing abuse of discretion is clearly upon the appellant. If the ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration, the trial court abused its discretion. *Shirrell v. Missouri Edison Co.*, 535 S.W.2d 446, 448 (Mo. banc 1976).

When deciding whether leave should be granted, the trial court should consider: (1) the hardship to the moving party if leave to amend is denied; (2) the reasons for the moving party's failure to include the matter in the original pleading; and (3) the injustice to the non-moving party should leave to amend be granted. *Baker v. City of Kansas City*, 671 S.W.2d 325, 329 (Mo. App.1984). Rule 55.33(a) provides that leave to amend "shall be freely given when justice so requires" and that "a party may amend his pleading ... by leave of court." The grant of leave to amend is within the sound discretion of the trial court. *Clayton Brokerage Co. of St. Louis v. Lowrance*, 592 S.W.2d 218, 225 (Mo.App.1979).

---

**2.** Section 327.401 RSMo 1986 in relevant part provides:

Any domestic corporation formed under the general and business corporation law or under the professional corporation law of this state, or any foreign corporation, now or hereafter organized and having as one of its purposes the practicing of architecture or professional engineering or land surveying and any existing corporation which amends its charter to propose to practice architecture or professional engineering or land surveying shall obtain a certificate of authority for each profession named in the articles of incorporation from the board which shall be renewed in accordance with the provisions of section 327.171 or 327.261 or 327.351, as the case may be, and from and after the date of such certificate of authority and while the authority or a renewal thereof is in effect, may offer and render architectural or professional engineering or land surveying services in this state. ...

Section 327.461 RSMo 1986 provides:

Every contract for architectural or engineering or land surveying services entered into by any person who is not a registered or authorized architect or registered or authorized professional engineer or registered or authorized land surveyor, as the case may be, and who is not exempt from the provisions of this chapter, shall be unenforceable by the unregistered or unauthorized architect or professional engineer or land surveyor.

■ Respondents state their reason for failing to include § 327.461 as a defense in their original answer was that they reasonably believed HDC had the burden of alleging and proving, as an element of its contract and account claims, that HDC was properly licensed to perform architectural services. Upon the trial court's ruling on February 17, 1989, that § 327.461 was an affirmative defense and must be pleaded, respondents immediately requested permission to amend their answers to comply with the trial court's ruling.

The trial judges in both lawsuits used their discretion liberally over the eight year history of this matter. HDC benefitted significantly from such exercise of such discretion when the first dismissal was deemed to be voluntary and when HDC was allowed to amend its petition six years after filing its original petition to add Henry L. DiRe' as a party defendant. HDC's only claim of prejudice is that the amended answer raising § 327.461 as a defense was filed after Hewitt & Royer was dissolved and, therefore, prevented Hewitt & Royer from pursuing any claims in its own name. This argument would be more influential if the forfeiture of Hewitt & Royer's charter and its dissolution had occurred after the petition and answer were filed in the present case, rather than in 1983, early in the original lawsuit.

Here, it cannot be said the trial court abused its discretion. Justice was furthered by allowing respondents to amend their answers. HDC is not now nor has it ever been licensed to practice architecture in the State of Missouri under § 327.461. To allow recovery of fees would, in essence, put the court's stamp of approval on the practice of architecture without the proper license, which is strictly against public policy in this state. The trial court properly weighed the three considerations as announced in *Baker*, and, therefore, appellant's point I is denied.

■ The case at bar is analogous to *Haith & Co. v. Ellers, Oakley, et al.*, 778 S.W.2d 417 (Mo.App.1989), another Missouri case dealing with the requirement of certification under § 327.461. In *Haith*, a professional engineering firm not authorized in Missouri to render professional engineering services was precluded from enforcing the contract for such services, even though two engineers who worked on the project for the corporation were professional registered engineers in this state. This factual situation in *Haith* is especially helpful in deciding the case at bar. Even though the architectural work was performed by Hewitt & Royer, a corporation registered in this state to perform architectural services, HDC is not. Generally, any act forbidden by legislative enactment, if passed for the protection of the public and providing for a penalty, cannot be the foundation of a valid contract. *See generally King v. Moorehead*, 495 S.W.2d 65, 78 (Mo. App.1973) (although a landlord was allowed to recover the reasonable value of the premises during the tenant's occupancy notwithstanding the illegality of the rental contract in question, the general rule still applies).

■ The registration statute must be strictly construed. As stated in *Haith*, "[t]his court acknowledges the harsh impact resulting from the corporation's loss of contractual benefits for the rendition of engineering services, but this court is duty bound to follow our state legislature's clear mandate that contracts entered into by unregistered professional engineers [architects and land surveyors] shall be unenforceable by them." *Haith*, 778 S.W.2d at 422.

Point two deals with HDC's appeal from the entry of summary judgment against it. On appeal from a summary judgment, this court is required to view the record in a light most favorable to appellant. *Zafft v. Eli Lilly & Co.*, 676 S.W.2d 241, 244 (Mo. banc 1984). Summary judgment is a drastic remedy and is inappropriate unless the prevailing party has shown by unassailable proof that he is entitled to judgment as a matter of law. *Gast v. Ebert*, 739 S.W.2d

545, 546 (Mo. banc 1987). The burden is on the moving party to demonstrate there is no genuine issue of fact. *Id.* A genuine issue of fact exists when there is the slightest doubt about a fact. *Id.*

 HDC asserts that it is entitled to recovery for "non-architectural" services provided to Park Lane. HDC lists these "non-architectural" services as: (1) the submission of development work by Park Lane on behalf of HDC to the city of Kansas City; (2) performance and coordination of rezoning work; (3) reception and evaluation of construction bids on the Professional Building; and (4) out-of-pocket expenses in connection with the Professional Building such as printing expenses. HDC relies on *Food Management, Inc. v. Blue Ribbon Beef Pack, Inc.*, 413 F.2d 716 (8th Cir.1969) for the proposition that a contract which provides both architectural and non-architectural services is severable, and, even though the corporation providing the service was not entitled to collect payment for the architectural services (as it was not licensed to provide such services), it could recover payment for those services that were non-architectural. *Food Management*, 413 F.2d at 725–26. In *Food Management*, however, those services provided which were non-architectural were readily discernable from that which was architectural.

The practice of architecture as defined by the Iowa legislature and relied upon in *Food Management* reads:

[A]ny professional service, such as consultation, investigation, evaluation, planning, and design, or responsible supervision of construction, in connection with the construction of buildings, or related structures and projects, or the addition to or alteration thereof, wherein the safeguarding of life, health, or property is concerned or involved. Ia.C.A. § 118.16.

*Food Management*, 413 F.2d at 723. Under this definition, the Eighth Circuit severed the contract into architectural service as defined by the statute and non-architectural services. *Food Management*, 413

F.2d at 725. Services considered non-architectural included: (1) negotiation of a captive slaughter arrangement for Blue Ribbon, which was a meat-packing company; (2) compilation of a control manual to provide standards for labor, materials and by-product yields; and (3) initial management of the meat-packing plant. *Id.*

In Missouri, the practice of architecture is defined as follows:

Any person practices architecture in Missouri who renders or offers to render or represents himself as willing or able to render service or creative work which requires architectural education, training and experience, including services and work such as consultation, evaluation, planning, aesthetic and structural design, the preparation of drawings, specifications and related documents, and the coordination of services furnished by structural, civil, mechanical and electrical engineers and other consultations as they relate to architectural work in connection with the construction or erection of any private or public building, building structure, building project or integral part or parts of buildings or of any additions or alterations thereto.

§ 327.091, RSMo 1986. Here, the work HDC claims to be non-architectural is indeed architectural under the broad definition of the statute. Specifically, the "... services and work such as consultation ... planning ... the preparation of drawings ... related documents ... and other consultations as they relate to architectural work ..." encompasses that which HDC claims as "non-architectural" services. This contract cannot be severed. Thus, in accordance with § 327.461, the contract between HDC and Park Lane Land Company is unenforceable.

 HDC further claims that it is entitled, as a matter of law, to recover the reasonable value of the services provided to Park Lane under principles of quantum meruit as plead in Count II of HDC's petition. Under the theory of quantum meruit,

where one person renders valuable services to another which the latter accepts, the law will ordinarily imply a promise to pay the reasonable value of such services. *Kolb v. Howard Corporation*, 219 S.W.2d 856, 858 (Mo.App.1949) (Kolb, an architect, sued in quantum meruit for recovery for architectural services). In order for there to be an implied contract under the theory of quantum meruit, a benefit must be conferred upon the recipient of the goods or services. *Bennett v. Adams*, 362 S.W.2d 277, 281 (Mo.App.1962). "Running through all the cases which involve quantum meruit by reason of contract implied in law are the words 'valuable' and 'beneficial' services." *Id.* To recover under quantum meruit, the claimant must show that such services were of value or benefit to the recipient. *Id.*

 Here, no benefits were conferred upon Park Lane. Park Lane never used the services, plans, drawings or specifications of HDC; nor was a medical office building ever built using the plans. As stated in *Kolb*, "[w]e cannot escape the conclusion that the evidence [is] wholly insufficient to predicate a recovery upon the theory that defendant used Kolb's plans in the construction of the building so as to have subjected itself to liability by implication of law." *Kolb*, 219 S.W.2d at 859.

This is not to say that an unlicensed architect may never recover under a theory of quantum meruit. The case at bar does not present sufficient facts warranting recovery. *See e.g. Ellers, Oakley, Chester & Rike v. Haith & Co.*, 728 F.Supp. 646 (D.Kan.1989) (finding that § 327.461 does not by its express terms preclude an unregistered engineer from recovering in quantum meruit).

Lastly, in its subdivided point II, HDC contends that there was a genuine issue of material fact as to whether DiRe' had authority to bind Park Lane in an agreement with HDC. This court notes at the outset of discussion under this subpoint that the agreement between HDC and Park Lane is unenforceable pursuant to § 327.461. Since the contract itself is illegal, DiRe' cannot bind Park Lane to an agreement which is, in essence, void since HDC did not adhere to the requisite registration requirements. Further, HDC cannot recover under the theory of quantum meruit because no benefit was conferred upon Park Lane. Thus, the question of whether DiRe' is or is not an agent of Park Lane is moot. Appellant's point II is in all respects ruled against it.

The judgment of the trial court is affirmed.

All concur.