**KANSAS CITY COMMUNITY CENTER, Plaintiff,**

v.

**HERITAGE INDUSTRIES, INC., Defendant.**

No. 90–0905–CV–W–2.

United States District Court, W.D. Missouri, W.D.

Sept. 23, 1991.

George W. Quatman, II, Kurt D. Tilton, Jonathan K. McCoy, Shughart, Thomson & Kilroy, P.C., Kansas City, Mo., for plaintiff.

James H. Ensz, Ensz & Jester, Kansas City, Mo., for defendant.

## ORDER

GAITAN, District Judge.

Plaintiff, Kansas City Community Center, is a not-for-profit corporation that pro- vides drug and alcohol rehabilitation servic- es in Kansas City, Missouri. Defendant, Heritage Industries, Inc., is a manufactur- er of prefabricated modular housing and is located in Nebraska. In February of 1990, the parties entered into a "Purchase Agree- ment" for the design and construction of a new drug and alcohol facility in Kansas City. Plaintiff has terminated this agree- ment and is suing for reimbursement of funds forwarded to defendant under the contract. Defendant counterclaims for breach of contract and quantum meruit. Plaintiff has moved for summary judgment claiming that this contract is void and un- enforceable. Defendant has filed a coun- ter-motion seeking declaratory relief.

There is no dispute that, as of the date the contract was signed, defendant was both unlicensed and without a corporate Certificate of Authority to practice either architecture or engineering in the state of Missouri. "Practice" of architecture and professional engineering are defined by statute in Mo.Rev.Stat. § 327.091 and § 327.181 (1986), respectively. Section 327.091 defines the practice of architecture as follows:

> Any person practices architecture in Mis- souri who renders or offers to render or represents himself as willing or able to render service or creative work which requires architectural education, train- ing, and experience, including services and work such as consultation, evalua- tion, planning, aesthetic and structural design, preparation of drawings, specifi- cations and related documents, and the coordination of services furnished by structural, civil, mechanical and electrical engineers and other consultants as they relate to architectural work in connection with the construction or erection of any private or public building, building struc- ture, building project or integral part or parts of buildings or of any additions or alterations thereto.

Section 327.181 defines the practice as a professional engineer as follows:

> Any person practices in Missouri as a professional engineer who renders or of- fers to render or holds himself out as

willing or able to render any service or creative work, the adequate performance of which requires engineering education, training, and experience in the application of special knowledge of the mathematical, physical, and engineering sciences to such services or creative work as consultation, investigation, evaluation, planning, and design of engineering works and systems, engineering teaching of advanced engineering surveys, and the inspection of construction for the purpose of assuring compliance with drawing and specifications, any of which embraces such service or work either public or private, in connection with any utilities, structures, buildings, machines, equipment, processes, work systems, or projects and including such architectural work as is incidental to the practice of engineering....

Paragraph "I" of the Purchase Agreement is entitled "Plans & Permits" and states that defendant contractually agreed to:

[c]omplete architectural plans for the building and all liaison work required at City Hall in connection with obtaining the building permits, and engineering work required to design the foundation and do grading and utility plans.

The remainder of the agreement, paragraphs "II" through "V," detail how defendant would deliver a completed facility to plaintiff in accordance with, and flowing directly from, the architectural and engineering plans created under paragraph I.

█ Defendant's actions under paragraph I undoubtedly are both the practice of "architecture" and "professional engineering" as those terms are defined in sections 327.091 and 327.181. As a "person"[1] practicing architecture and engineering without the necessary licensing and certification from Missouri, defendant was in violation of Mo.Rev.Stat. § 327.101 & § 327.191 (1986), respectively. The fact that two engineers licensed and certified by the State of Missouri placed their seal on the plans after being created by defendant

does not alter the court's determination concerning the legality of defendant's actions: In order for the plans to be valid under the controlling Missouri statutes, the plans must be made under the "personal direction" of the Missouri certified architect or engineer providing his or her seal. Mo.Rev.Stat. § 327.401.1 (1986).

There is no issue concerning the material fact that defendant was illegally engaged in the practice of architecture and engineering under Missouri law. The result of this illegal activity is clearly stated in Mo. Rev.Stat. § 327.461 (1986). Section 327.461 states that "[e]very contract for architectural or engineering or land surveying services entered into by any person who is not a registered or authorized architect or registered or authorized professional engineer ... shall be unenforceable...." Therefore, this court finds that, as a matter of law, defendant is precluded from enforcing the contract with the plaintiff. See In re Branson Mall, 120 B.R. 1006 (Bkrtcy. W.D.Mo.1990); Haith and Co., Inc. v. Ellers, Oakley, Chester & Rike, Inc., 778 S.W.2d 417 (Mo.App.1989); Hospital Dev. Corp. v. Park Lane Land Co., 813 S.W.2d 904 (Mo.Ct.App.1991) (motion for rehearing or transfer to Missouri Supreme Court denied August 27, 1991). Defendant seeks to escape this outcome by arguing that (1) the provisions of Chapter 327 of the Missouri Revised Statutes are inapplicable to this case; (2) the architectural and engineering portion of the contract, as stated in paragraph I, are divisible from the remainder of the contract; and (3) that it should be allowed to seek recovery through the equitable remedy of quantum meruit.

█ Defendant contends that Chapter 700 of the Missouri Revised Statutes is, to the exclusion of Chapter 327, controlling in this factual situation. Chapter 700, entitled "Manufactured Homes (Mobile Homes)," regulates the construction, inspection, sales and certificates of title of mobile and modular structures. While the court does not doubt that the provisions in

---

1. "Person" is defined in Mo.Rev.Stat. § 327.011 as "any person, corporation, firm, partnership, association, or other entity."

Chapter 700 are applicable to the structure in question, there is no authority that these provisions are exclusive and preclude application of the provisions found in Chapter 327. Defendant claims that Mo.Rev.Stat. § 700.035 (1986),[2] supersedes the provisions of Chapter 327. However, this court sees no conflict in the two statutory schemes: one regulates how "manufactured homes" are made, inspected, sold and titled while the other regulates the professional practice of architecture and engineering. Therefore, defendant's argument is without merit.

Defendant correctly points out that *Branson Mall, Haith,* and *Park Lane* are factually distinguishable from the present action in that those cases involved contracts exclusively for architectural and engineering services. Defendant argues that the contract in this case is composed of divisible elements, of which the contract for architectural and engineering services stated in paragraph I is only one. Therefore, contends defendant, while the application of section 327.461 in *Branson Mall, Haith,* and *Park Lane* may void paragraph I the remaining paragraphs are still valid and enforceable.

■ Missouri has chosen to define the practice of architecture and engineering in broad terms. *See* Mo.Rev.Stat. §§ 327.091 & 327.181 (1986), *supra; Hospital Dev. Corp. v. Park Lane Land Co.,* 813 S.W.2d at 907 (Mo.Ct.App.1991) (motion for rehearing or transfer to Missouri Supreme Court denied August 27, 1991). *Erie R.R. Co. v. Thomkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), requires this court to enforce those broad definitions. Accordingly, the court finds that completion of the contract would necessitate that defendant engage in the "practice" of architecture and engineering as defined in sections 327.-091 and 327.181. While only paragraph I expressly states that defendant will be rendering architectural and engineering servic-

es, the remainder of the contract unavoidably implies that defendant must render such services to complete the contract. Defendant cites *Food Management, Inc. v. Blue Ribbon Beef Pack, Inc.,* 413 F.2d 716 (8th Cir.1969), as supporting his claim that this contract is divisible. In *Food Management,* the Eighth Circuit held that the contract in question was

divisible into two parts—legal and illegal. The illegal portion of the contract relates to the architectural and engineering service which Food Management agreed to perform in violation of the Iowa registration statutes (similar to the Missouri architect and engineer registration statutes). The legal portion of the agreement relates to those services which are neither architectural nor engineering services.

*Id.* at 725 (parenthetical added). However, those portions of the contract that the court found divisible were fundamentally different from the illegal contract to provide architectural and engineering services. *Id.* In addition to contracting to provide architectural and engineering services needed to design and construct a meat processing plant, Food Management, Inc. negotiated a "captive slaughter arrangement" between Blue Ribbon and prospective meat purchasers, "compiled a control manual to provide standards for labor, materials and by-product yields," was to provide the "shakedown operation" of the plant, and "initially manage the plant if trained personnel were not available." *Id.* Importantly, the contractual obligations of Food Management, Inc. extended beyond the completion of the processing plant into areas such as finding buyers for Blue Ribbon's goods, establishing on-going operating procedures for the plant, and even providing interim management of the facility. These post-completion obligations are remarkably different in nature from defendant's obligations under the contract in

**2.** Section 700.035 states:
If a manufactured home, recreational vehicle or modular unit carries a seal as provided in sections 700.010 to 700.115, no agency of this state, nor any municipality or other local government body shall require such manufac-

tured home, recreational vehicle, or modular unit to comply with any other building, plumbing, heating or electrical code other than the code established by sections 700.010 to 700.115.

question. Defendant contracted to deliver a completed, functional structure, nothing more.

■ Missouri law states that the intent of the parties determines whether a contract is divisible. "Whether a contract is entire or divisible is primarily a question of intention which is to be determined from the language the parties have used and the subject matter of the agreement." *Fischer v. National Indus. Serv., Inc.*, 735 S.W.2d 114, 116 (Mo.Ct.App.1987). The language of the contract now in question and the subject matter of the agreement are strongly indicative that the contract was entire and not divisible. As previously stated, the contract contemplated delivery of a completed, functional structure, and does not support the argument that the parties intended to execute independent, self-contained agreements. The consideration offered was for the construction of a facility from start to finish; nothing more, nothing less. "A contract is entire if a party's duty to perform each of his promises is dependent upon the other party's performance of each of his ... On the other hand, if a contract embraces distinct promises that admit of being separately executed, the contract is divisible." *Fischer*, 735 S.W.2d at 116. Here there are no distinct promises to be separately executed. Plaintiff's duties under the contract were dependent upon mutual performance by defendant, specifically delivery of the completed structure. The court finds that the contract was entire, not divisible, and accordingly finds no merit in defendant's argument.

■ Finally, defendant argues that despite the contract being void in its entirety he should be allowed to pursue a quantum meruit action against plaintiff. Any claim that defendant would have for quantum meruit would be based, either directly or indirectly, on the architectural and engineering services rendered. It has previously been established that the architectural or engineering services rendered by defendant were in violation of Chapter 327 of the Missouri Revised Statutes. Missouri courts have held that

The principle is well settled that no court will lend its aid to a man who founds his cause of action upon an illegal act. This is a principle founded upon public policy, not for the sake of the defendant (or plaintiff in this case), but for the law's sake, and that only.

*Sandbothe v. Williams*, 552 S.W.2d 251, 255 (Mo.Ct.App.1977) (quoting *Schoene v. Hickam*, 397 S.W.2d 596, 602 (Mo.1965)); *see also In re Branson Mall*, 120 B.R. 1006, 1014 (Bkrtcy.W.D.Mo.1990). This is not to say that there is no factual situation in which unlicensed architects or engineers can recover in quantum meruit. Rather, the facts of this case preclude equitable recovery because any claim defendant might have necessarily rises from the illegal acts, and cannot be severed from those acts. Accordingly, defendant's argument that an action in quantum meruit lies against plaintiff is without substance.

Plaintiff's also seeks restitution for $9,546.00 paid to defendant on the date the contract was signed "to begin architectural drawing and site engineering." The parties are in agreement on the amount paid and the purpose of the payment. This consideration was paid for acts clearly in violation of Chapter 327 and cannot serve as the basis for an equitable remedy. Coupling this with the court's previous finding that the contract is unenforceable in its entirety, defendant has no theory for claiming title to these funds. *See Sandbothe v. Williams*, 552 S.W.2d 251, 255 (Mo.Ct.App. 1977). Accordingly, plaintiff's request for restitution is valid.

Accordingly, it is ORDERED that:

(1) Plaintiff's motion for summary judgment is granted because the contract between the parties is unenforceable and defendant has no claim for quantum meruit;

(2) Defendant's motion for declaratory relief is denied; and

(3) Defendant shall pay plaintiff $9,546.00 in restitution.