**KANSAS CITY COMMUNITY CENTER, Appellee,**

v.

**HERITAGE INDUSTRIES, INC., Appellant.**

**No. 91–3695.**

United States Court of Appeals, Eighth Circuit.

Submitted June 11, 1992.

Decided July 23, 1992.

Eighth Circuit.

James H. Ensz, Kansas City, Mo., argued, for appellant.

George W. Quatman, II, Kansas City, Mo., argued, for appellee.

Before ARNOLD, Chief Judge, HEANEY, Senior Circuit Judge, and MAGILL, Circuit Judge.

HEANEY, Senior Circuit Judge.

Heritage Industries, Inc. appeals the district court's summary judgment, holding its contract with Kansas City Community Center unenforceable because Heritage was not properly licensed for the architectural and engineering services that it contracted to perform. We affirm.

## FACTS

On February 22, 1990, Kansas City Community Center (KCCC), a not-for-profit provider of drug and alcohol rehabilitation services, contracted with Heritage Industries, Inc. (Heritage), a Nebraska manufacturer of prefabricated modular housing, to plan, design and construct KCCC's new rehabilitation facility in Kansas City, Missouri. As part of its contract "for the design and construction of [KCCC's] new drug and alcohol treatment facility," Heritage agreed to:

> Complete architectural plans for the building ... and engineering work required to design the foundation and do grading and utility plans.

Upon signing the contract, KCCC paid Heritage two percent ($9,546) of the contract price ($477,300) "as a deposit ... to begin architectural drawing and site engineering." Heritage accordingly began designing KCCC's new drug and alcohol treatment facility, including the facility's architectural design, its mechanical, electrical, and plumbing engineering, and its heating and air-conditioning.

The Missouri legislature defines the practice of architecture as:

> Any person practices architecture in Missouri who renders or offers to render or represents himself as willing or able to render service or creative work which requires architectural education, training, and experience, including services and work such as consultation, evaluation, planning, aesthetic and structural design, preparation of drawings, specifications and related documents, and the coordination of services furnished by structural, civil, mechanical and electrical engineers and other consultants as they relate to architectural work in connection

with the construction or erection of any private or public building, building structure, building project or integral part or parts of buildings or of any additions or alterations thereto.

Mo.Ann.Stat. § 327.091 (Vernon 1989). Professional engineering is defined as:

Any person practices in Missouri as a professional engineer who renders or offers to render or holds himself out as willing or able to render any service or creative work, the adequate performance of which requires engineering education, training, and experience in the application of special knowledge of the mathematical, physical, and engineering sciences to such services or creative work as consultation, investigation, evaluation, planning and design of engineering works and systems, engineering teaching of advanced engineering subjects or courses related thereto, engineering surveys, and the inspection of construction for the purpose of assuring compliance with drawings and specifications, any of which embraces such service or work either public or private, in connection with any utilities, structures, buildings, machines, equipment, processes, work systems, or projects and including such architectural work as is incidental to the practice of engineering. . . .

Mo.Ann.Stat. § 327.181 (Vernon 1989). Missouri law prohibits an individual from practicing these professions in Missouri "unless and until there is issued to him a certificate of registration or a certificate of authority certifying that he has been duly registered as an architect [or engineer] or authorized to practice architecture [or engineering] in Missouri." Mo.Ann.Stat. §§ 327.101 and 327.191 (Vernon 1989). Moreover, a corporation is statutorily prohibited from practicing architecture or engineering in Missouri unless the Missouri Board for Architects, Professional Engineers, and Land Surveyors issues a Certificate of Authority to the corporation certifying that it has been duly authorized to practice architecture or engineering in the state of Missouri. Mo.Ann.Stat. § 327.401 (Vernon 1989). To enforce these prohibitions, Missouri law provides:

Every contract for architectural or engineering or land surveying services entered into by any person who is not a registered or authorized architect or registered or authorized professional engineer or registered or authorized land surveyor, as the case may be, and who is not exempt from the provisions of this chapter, shall be unenforceable by the unregistered or unauthorized architect or professional engineer or land surveyor.

Mo.Ann.Stat. § 327.461 (Vernon 1989).

Soon after Heritage began preliminary work on the project, KCCC learned that Heritage lacked a corporate Certificate of Authority to practice either architecture or engineering in the state of Missouri. Therefore, KCCC terminated its contract with Heritage. When Heritage threatened to sue for damages, KCCC instituted this suit to assure its right to terminate the contract and to obtain restitution for the deposit it paid to Heritage. Heritage answered with counterclaims for breach of contract and quantum meruit damages. On summary judgment, the district court ruled that Heritage could not enforce the contract and that Heritage must pay KCCC $9,546 in restitution. 773 F.Supp. 181.

## DISCUSSION

Heritage raises two arguments on appeal: (1) the district court erroneously held the entire contract unenforceable; and (2) the district court erroneously awarded KCCC restitution instead of awarding Heritage quantum meruit damages. Importantly, during oral argument before this court, Heritage confirmed that it does not claim that the Missouri licensing statutes violate the Constitution's commerce clause.

### I. Enforceability of Contract

■ Heritage admits that it does not possess a corporate Certificate of Authority to practice either architecture or engineering in Missouri. Heritage argues, however, that because its contractual obligations require only incidental architectural and engineering services, we should not void the entire contract. The Missouri leg-

islature has squarely addressed this argument, proclaiming,

> Every contract for architectural or engineering ... services entered into by any person who is not a registered or authorized architect or registered or authorized professional engineer ... shall be unenforceable by the unregistered or unauthorized architect or professional engineer.

Mo.Ann.Stat. § 327.461 (Vernon 1989) (emphasis added). Thus, we find no merit in Heritage's argument. See Hosp. Dev. Corp. v. Park Lane Land Co., 813 S.W.2d 904, 908 (Mo.App.1991), and Haith and Co., Inc. v. Ellers, Oakley, Chester & Rike, Inc., 778 S.W.2d 417, 421–22 (Mo. App.1989).

■ Anticipating this conclusion, Heritage contends that rather than voiding the entire contract, only the provisions dealing with architectural and engineering services should be unenforceable. In urging that the contract be severed, Heritage ignores the Supreme Court of Missouri's pronouncements that, "[a]s a general rule, a valid and enforceable contract may not arise out of a transaction prohibited by statutory law. The question is one of legislative intention." Greer v. Zurich Ins. Co., 441 S.W.2d 15, 26 (Mo.1969) (citations omitted); and that,

> The illegality inhering at the inception of such contracts taints them throughout and effectively bars enforcement. The reason for denying relief to a person suing on a contract where a license is required and none is obtained is that the law will not aid such person in enforcing a contract which he had no right to make.

Schoene v. Hickam, 397 S.W.2d 596, 602 (Mo.1965) (quoting Garvin v. Gordon, 36 N.M. 304, 14 P.2d 264, 266 (1932) and Mueller v. Burchfield, 359 Mo. 876, 224 S.W.2d 87, 88 (1949).

These general dictates aside, with respect to severing contracts, Missouri's Supreme Court instructs that,

> The determination of the separability of this provision of the contract is governed primarily by the intention of the parties which is to be arrived at from a consideration of the whole contract, the language used, and the subject matter of the agreement (13 C.J. 562), and, if it appears upon such examination that the contract would not have been made independently of the invalid part, the contract as a whole must be held invalid.

Hagler v. City of Salem, 333 Mo. 330, 62 S.W.2d 751, 755 (1933). The contract here clearly contemplated architectural and engineering services to be an integral part of Heritage's duties. For instance, the heading and opening provisions of the contract read,

## PURCHASE AGREEMENT

For the design and construction of [KCCC's] drug and alcohol treatment facility to be built at 16th and Campbell Streets, Kansas City, Missouri as per the preliminary plans and these outline specifications:

### I. Plans & Permits

Complete architectural plans for the building and all liaison work required at City Hall in connection with obtaining the building permits, and engineering work required to design the foundation and do grading and utility plans. We do not include a land survey of your property or plans required for any zoning changes.

(emphases added). These provisions reinforce the commonsensical conclusion that modular housing units cannot be designed and built without practicing architecture and engineering given the Missouri legislature's broad definition of these professions. In this situation, we are convinced that KCCC would not have contracted with Heritage if KCCC had realized that Missouri law barred Heritage from performing the architectural and engineering services required by the contract. In fact, KCCC's executive director testified (in an affidavit) that,

> In my negotiations with Heritage Industries, Inc., their representatives stressed that the advantage of modular construction was that they do all of the design and construction as one package,

for one price, and that by providing all of this together, they can save time and money over the conventional process.

Had the design services not been part of Heritage's proposal and our Purchase Agreement, I would not have hired them. If we had to hire our own architect to do the design, we would have competitively bid the job to other contractors to get the best price.

In sum, given the subject matter and wording of the contract, the contract here cannot be divided, as Heritage urges. *See, e.g., Fischer v. Nat'l Indus. Services, Inc.,* 735 S.W.2d 114, 116 (Mo.Ct.App.1987).

## II. Damages

With respect to damages, Heritage argues that it should recover quantum meruit damages and that the district court erroneously awarded KCCC restitution. We disagree.

### A. Quantum Meruit

■ Heritage contends that KCCC used Heritage's work product to gain a building permit, and therefore, under a theory of quantum meruit, KCCC's use of Heritage's efforts renders KCCC liable to Heritage for services rendered. A Missouri court considered this argument in *Sandbothe v. Williams,* 552 S.W.2d 251 (Mo.Ct.App. 1977), where the plaintiff brought a quantum meruit action to recover for services he rendered as a real estate agent, even though he was not a licensed real estate broker at the time he performed the services. Because Sandbothe was not properly licensed, his contract, like the one here, "was void and unenforceable." *Id.* at 254–55 (citing *Schoene v. Hickam,* 397 S.W.2d at 602) ("The principle is well settled that no court will lend its aid to a man who founds his cause of action upon an illegal act. This is a principle founded upon public policy, not for the sake of the defendant, but for the law's sake, and that only."). Accordingly, because "there is a strong public policy, as well as a statutory prohibition, against reward for illegal activity such as profiting as a real estate broker without the required license," the Missouri

court decided that the plaintiff was not entitled to quantum meruit recovery. *Id.* at 254–55. The same public policy and statutory concerns that motivated that decision are present here, and thus, Heritage is similarly barred from receiving compensation. *See In re Branson Mall, Inc.,* 120 B.R. 1006, 1014 (Bkrtcy.W.D.Mo.1990) (preventing a corporation not licensed to practice architecture in Missouri from recovering for services rendered because "quantum meruit will not lie based on the well-settled principle that no court will lend its aid to a cause of action founded upon an illegal act.") (citing *Sandbothe,* 552 S.W.2d at 255).

### B. Restitution

Citing this court's decision in *Food Management v. Blue Ribbon Beef Pack, Inc.,* 413 F.2d 716 (8th Cir.1969), Heritage argues that the district court erred in ordering Heritage to pay KCCC $9,546 in restitution. In *Food Management,* which involved Iowa and not Missouri law, our court affirmed the district court's refusal to award restitution on the grounds that "there would be no equitable harm to Blue Ribbon in not invoking restitution because, as found by the trial court, *it obtained the service it had bargained for."* *Id.* at 727 (emphasis added). Here, however, KCCC did not get what it bargained for because when it terminated its contract with Heritage, it hired a new firm for the building project. Indeed, KCCC's executive director testified that after terminating its contract with Heritage,

KCCC hired WGN Associates to act as architect to develop entirely new plans for the drug and alcohol treatment facility. Based on WGN Associates' plans, we entered into a contract with Neighbors Construction Co. to build the new facility.... Although Heritage did provide architectural and engineering plans for a new building, those plans were abandoned when the contract was terminated and the Heritage plans were not used and no building was ever built utilizing the Heritage plans. Our new facility was constructed based entirely on the WGN Associates plans.

Thus, unlike Blue Ribbon in *Food Management*, KCCC did not receive the services for which it bargained.

 Public policy also supports the award of restitution in this case. As the en banc Supreme Court of Missouri explained,

Where sound public policy will be better promoted by granting than by denying relief in a case such as this, an exception to the general rule applies and relief will be afforded a party to an illegal contract to recover the property transferred thereunder, particularly so, where the parties are not in pari delicto.

*Gardine v. Cottey*, 360 Mo. 681, 230 S.W.2d 731, 740 (en banc 1950) (citations omitted). In Missouri, "where a statute makes one party to an illegal contract the offender and fails to make the other party to the illegal contract an offender ... the parties [are] not in pari delicto...." *Twiehaus v. Rosner*, 362 Mo. 949, 245 S.W.2d 107, 112 (1952). We believe section 327.461 clearly makes the unlicensed architect or engineer the offender, because only the unlicensed party is barred from enforcing the contract. Thus, Missouri law does not consider KCCC and Heritage to be in pari delicto. Accordingly, public policy favors granting KCCC's request for restitution. *See Hosp. Dev. Corp. v. Park Lane Land Co.*, 813 S.W.2d 904, 908 (Mo.Ct.App.1991) ("To allow recovery of fees would, in essence, put the court's stamp of approval on the practice of architecture without the proper license, which is strictly against public policy in this state."); *see also Mascarenas v. Jaramillo*, 111 N.M. 410, 806 P.2d 59, 63 (1991) ("We believe that allowing recovery of payments on a contract to an unlicensed construction contractor serves and advances the purpose of the act. The practical effect of our decision will be to further inhibit unlicensed contractors from engaging in construction work without a license.... As a matter of public policy, an unlicensed contractor may not retain payments made pursuant to a contract which requires him to perform in violation of the Construction Industries Licensing Act."). In sum, because KCCC did not receive the services for which it bargained and because public policy supports awarding restitution, we affirm the district court's order that Heritage must pay KCCC $9,546.

### CONCLUSION

We affirm the decisions of the district court.